**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § § § | |
| **Plaintiff,** | § | **No. 1:24-cv-12586-AK** |
| | § | |
| **v.** | § § | |
| **RUSSELL ARAMAND, et al.,** | § § | |
| | § | |
| **Defendants.** | § § | |
| | § | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT KOHLI'S MOTION TO DISMISS UNDER FRCP 12(b)(2) AND 12(b)(6)</u>

Eric S. Rosen
DYNAMIS LLP
225 Franklin St., 26th Floor
Boston, MA 02110
(646) 541-8484
erosen@dynamisllp.com

Michael B. Homer
DYNAMIS LLP
225 Franklin St., 26th Floor
Boston, MA 02110
(617) 693-9732
mhomer@dynamisllp.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

I.    Preliminary Statement ................................................................................................1

II.   Factual Background ....................................................................................................1

III.  Argument ...................................................................................................................6

   A.  The Court Lacks Personal Jurisdiction Over Kohli ..............................................6

      1.  Legal Standard ................................................................................................6

      2.  The SEC Cannot Satisfy the "Minimum Contacts" Due Process Test with
          Respect to Mr. Kohli ......................................................................................8

   B.  Claims 2–5 Are Impermissibly Extraterritorial and Should Be Dismissed ........13

      1.  Legal Standard ..............................................................................................13

      2.  The SEC Has Failed to Allege Facts Supporting Extraterritorial Application
          of the Securities Laws with Respect to Counts Two through Five ................14

IV.   Conclusion ...............................................................................................................18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54 (1st Cir. 2016)......................................7

*Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60 (2d Cir. 2012) ..................14, 16

*Adelson v. Hananel*, 510 F.3d 43 (1st Cir. 2007) ......................................................10

*Am. Well Corp. v. Indegene Ltd.*, No. 24-CV-10226-AK, 2024 WL 5153161 (D. Mass. 2024) ....6

*Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343 (D. Mass. 2017) .........................................10–11

*Calder v. Jones*, 465 U.S. 783 (1984).................................................................7, 11, 13

*Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 91 F.4th 511 (1st Cir. 2024) ...13–14

*Gould v. Wyse*, No. 22-2075, 2023 WL 4994511 (10th Cir. 2023)...........................................7–8

*Grice v. VIM Holdings Group, LLC*, 280 F. Supp. 3d 258 (D. Mass. 2017)................................11

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)..........................................................7

*Isijola v. US Telecommunications, Inc.*
    No. 4:23-CV-40080-MRG, 2024 WL 4190066 (D. Mass. 2024 ................................7–8

*Katz v. Liberty Power Corp., LLC*, 693 F. Supp. 3d 154 (D. Mass. 2023)...........................11, 13

*Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122 (1st Cir. 1997) .....................................11

*M-R Logistics, LLC v. Riverside Rail, LLC*, 537 F. Supp. 2d 269 (D. Mass. 2008).....................11

*Marino v. Hyatt Corp.*, 793 F.2d 427 (1st Cir. 1986) .......................................................9

*Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) ................................................14, 16

*Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708 (1st Cir. 1996) ...............................................6, 9

*RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325 (2016)...........................................14, 16–17

*Rosenberg v. Mass Mut. Life Ins. Co.*
    No. CV 23-10441-FDS, 2024 WL 421780 (D. Mass. 2024)............................................17

*SEC v. Elliott*, No. CV 20-10860-LTS, 2020 WL 7185854 (D. Mass. 2020) ..........................9–10

*SEC v. PlexCorps*, No. 17CV7007CBARML, 2018 WL 4299983 (E.D.N.Y. 2018) ...................9

*SEC v. Morrone*, 997 F.3d 52 (1st Cir. 2021) ...............................................................................16

*SEC v. Ripple Labs, Inc.*, No. 20CIV10832ATSN, 2022 WL 762966 (S.D.N.Y. 2022) .............14

*SEC v. Sharp*, 626 F. Supp. 3d 345 (D. Mass. 2022)....................................................6–7, 9, 13, 16

*SEC v. Spencer Pharm., Inc.,* 57 F.Supp.3d 127 (D. Mass. 2014) .................................................7

*SEC v. Straub*, 921 F. Supp. 2d 244 (S.D.N.Y. 2013) ..................................................................10

*Sensitech Inc. v. LimeStone FZE*, 548 F. Supp. 3d 244 (D. Mass. 2021) .....................................11

*Sheldon v. DT Swiss AG*, No. 1:22-CV-11198-IT, 2024 WL 5046921 (D. Mass. 2024) ...............6

*Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201 (1st Cir. 1994)............................................10

*Vapotherm, Inc. v. Santiago*, 38 F.4th 252 (1st Cir. 2022)...........................................................6

*Ward v. Auerbach*, No. CV 16-12543-FDS, 2017 WL 2724938 (D. Mass. 2017)................10, 12

*WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407 (2018) ...........................................13

*Yegiazaryan v. Smagin*, 599 U.S. 533 (2023) .........................................................................13–14

**Other authorities**

15 U.S.C. §§ 77e ..............................................................................................................................6

15 U.S.C. §§ 77q(a) ..........................................................................................................................6

15 U.S.C. § 77v(c) ......................................................................................................................15–16

15 U.S.C. § 78i(a)(2) ........................................................................................................................6

15 U.S.C. § 78j(b) .............................................................................................................................6

15 U.S.C. § 78aa(b) .....................................................................................................................16–17

17 C.F.R. §§ 240.10b-5.....................................................................................................................6

Fed. R. Civ. P. 9(b) ....................................................................................................7–8, 13, 17

## I.    PRELIMINARY STATEMENT

The Securities and Exchange Commission's ("SEC") grant of power to prosecute violations of the securities laws *of the United States* is expansive, but not absolute. In this case, the SEC has attempted to overstep its bounds by haling into Massachusetts federal court an individual who lives in the United Kingdom and who allegedly participated in fraudulently promoting a crypto-asset that traded on exchanges outside the United States. This overreach goes beyond the Constitutional limits of personal jurisdiction. Further, for several of the claimed offenses, the claims are not subject to the U.S. securities laws *at all* because the alleged conduct was fully extraterritorial. Because of these errors, Defendant Manpreet Kohli respectfully moves the Court to dismiss him from this case because the Court does not have personal jurisdiction over him to hear the charges. In the alternative, Mr. Kohli respectfully requests that the Court dismiss Claims 2–5 on extraterritoriality grounds.

## II.    FACTUAL BACKGROUND

On October 9, 2024, the SEC filed a Complaint against Mr. Kohli and his co-defendants, alleging that Mr. Kohli participated in "unregistered and fraudulent offers and sales of crypto assets being offered and sold as securities to the investing public" and further participated in manipulative trading of those securities. Dkt. 1 at ¶ 1. The claims revolve primarily around an alleged security called "Saitama Inu," which is a "dog-themed crypto asset that Defendants claimed would create wealth for investors through passive income and would supposedly promote financial literacy and global financial well-being." *Id*. at ¶ 2. The Saitama Inu scheme ("Saitama") allegedly commenced in June 2021. *Id*. The Complaint also alleges, beginning months later in March 2022, the unauthorized sale and distribution of a different token called "SaitaRealty," which is a "related dog-themed crypto asset that […] the defendants launched to supposedly 'tokenize' both physical

real estate and 'digital real estate' in the metaverse, luring investors with more promises of passive income and wealth creation." *Id*. at ¶ 3.

The Complaint also states that the "Defendants" hired purported "market makers"—ZM Quant Investment Ltd. and Gotbit Consulting LLC—to engage in manipulative trading on their behalf, thereby artificially inflating Saitama and Saita Realty's price and trading volume on multiple trading platforms." *Id.* at ¶ 6. The marketing of Saitama and SaitaRealty was primarily accomplished on "public communication channels," which include "X (formerly Twitter), Instagram, YouTube, Vimeo, Facebook, Discord, and the encrypted messaging platform Telegram." *Id*. at ¶ 7.

In alleging venue in the District of Massachusetts, the Complaint describes the actions of Defendant Hernandez, who lived in Massachusetts and "communicated with other defendants" about the scheme from his location in Massachusetts. *Id*. at ¶ 12. The Complaint provides conclusory allegations that the "Defendants individually and collectively acted through and on behalf of" Saitama LLC, a Massachusetts company which existed from "August 2021 through its dissolution in June 2022." *Id*. And it further states, in conclusory fashion, that securities were offered to Massachusetts residents and that individuals residing in Massachusetts purchased the allegedly artificially inflated securities. *Id*. There are no allegations that Kohli himself was part of that offering to Massachusetts residents or that he realized that unnamed Massachusetts residents had purchased the Saitama coins.

The Complaint concedes that Mr. Kohli resides in "India and London, England," but further notes that "[a]t all relevant times, Kohli was the Chief Financial Officer of Saitama LLC."[1]

---

[1] The Complaint alleges that Kohli described himself as the CFO of Saitama LLC, but fails to offer any adequate explanation as what Saitama LLC actually did with respect to the issuance of

*Id.* at ¶ 14. As described, this business existed only from August 2021 to June 2022, at which time a new business was formed in Dubai. The market manipulation companies allegedly hired by the defendants were in Belize and the British Virgin Islands, and according to the Complaint they have offices, variously, in Armenia, Portugal, Turkey, Vietnam, the United Arab Emirates, the United Kingdom, Hong Kong, Singapore and South Korea. *Id.* at ¶ 19–20.

The Complaint provides a detailed description of crypto and blockchain technology. *Id.* at ¶¶ 28–34. Critically, the Complaint acknowledges that blockchain is effectively a decentralized mechanism for completing transactions—it is "distributed ledger technology" that is contained in a "database spread across a network of computers that records all transactions[.]" *Id.* The Complaint highlights the stark differences between crypto decentralized transactions and "traditional securities markets," which crypto is not. *See, e.g.*, *id.* at ¶¶ 37–38.

The Complaint then describes a Saitama token as an "ERC-20 standard token on the Ethereum blockchain," pursuant to a "whitepaper" issued in June 2021. *Id.* at ¶¶ 42–43. The Complaint provides a detailed overview of Saitama and how it was marketed (*Id.* at ¶¶ 42–50), but offers a single conclusory sentence providing generic allegations that the online messages "were aimed at the investing public, including investors in the United States." *Id.* at ¶ 48. There are no specific examples of communications targeting anyone in the United States. Moreover, although the Complaint describes a marketplace called "SaitaMarket" as well as a trading platform "SaitaMaker" and a multi-channel content platform called "Saitama Edutainment," there are no

---

Saitama or SaitaRealty other than the conclusory and generic statement that it "further formalized the management of the Saitama project." Dkt. 1 at ¶ 60.

allegations that these trading platforms were based in the United States, sought out U.S. customers or catered to U.S. clients.[2]

In describing SaitaRealty, the Complaint contends that this was a "separate, but related crypto asset" that had a "corresponding physical and virtual real estate platform," a "virtual debit card" and an artificial intelligence based" application to "ship packages." *Id*. at ¶¶ 46–47. There are no allegations that any of these applications were designed to target the U.S. markets, with the Complaint again employing a single conclusory allegation that "[a]ll of these communications were aimed at the investing public, including investors in the United States." *Id*. at ¶ 48.

Notably, the complaint includes a detailed listing of the exchanges on which Saitama traded—"Saitama initially traded on Uniswap, and later on numerous other platforms, including at various times Bybit, OKX, Gate, LBank, Bitmart, MEXC, and XT, among others"—but fails to allege that any of these exchanges were based in the United States or targeted U.S. customers. *Id*. at ¶ 67. Uniswap is one of the premiere *decentralized* exchanges, meaning that the exchange does not hold any crypto-assets, but instead the assets are exchanged using liquidity pools of assets to facilitate token swaps.[3] None of the sales alleged in ¶ 70 are alleged to have occurred in the United States. Paragraphs ¶¶ 71–89 describe an alleged plot to manipulate the price of Saitama, and further includes multiple alleged communications among the defendants, but again fails to include a single communication suggesting that any of the defendants were targeting investors in the United States. Likewise, none of the market makers allegedly hired by the Defendants to inflate the trading volume of Saitama and SaitaRealty were based in the United States. *Id*. at ¶¶ 90–111.

---

[2] This is unsurprising given the distributed decentralized technology (crypto) at issue as well as the use of global communications platforms (such as Twitter and Facebook) which cater to no one national audience.

[3] *See* https://docs.uniswap.org/contracts/v2/concepts/protocol-overview/how-uniswap-works.

Paragraphs ¶¶ 112–17 describe statements made in Telegram chats and on Twitter, but nothing targeting U.S. investors or U.S. markets. Paragraphs ¶¶ 118–24 describe the use of a tool called "Dextools," which has nothing to do with the U.S. markets. Paragraph ¶ 125 describes an alleged false statement that the whitepaper "has been reviewed by regulators …," but does *not* allege that the statement said "U.S. regulators." Paragraphs ¶¶ 132–37 describe a number of statements made and Saitama sold, but fails to allege anything about the statements being targeted to the U.S. market or about the sales being placed on U.S. exchanges. Last, paragraphs ¶¶ 138–57 provide detailed allegations about SaitaRealty, the second token alleged to be part of this scheme. Again, there are no allegations about the targeting of U.S. investors or sales on U.S. exchanges. Rather, the only mention of the U.S. at all is a generic statement that individuals could invest "U.S. dollars, Bitcoin, or ETH" when purchasing SaitaRealty tokens. *Id*. at ¶ 52. No details are provided as to where or on what exchanges such transactions would take place.

Simply put, it is undisputed that Mr. Kohli lives outside the United States. There are no allegations that Mr. Kohli engaged in any activity in the United States other than serving briefly as the Chief Financial Officer ("CFO") of "Saitama LLC," an organization that is not alleged to have participated in any sales of securities but appears only to share the same name as one of the coins. There are no allegations that Mr. Kohli targeted U.S. investors or marketed Saitama or SaitaRealty on U.S. crypto exchanges. Rather, the sole allegations in the Complaint tying Mr. Kohli to the United States are that some of the *other* defendants lived in the United States and that some generic unspecified statements were put out on social media which could be *viewed* by people in the United States (as well as every other country in the world).

Finally, the Complaint asserts the following claims for relief against Mr. Kohli and his co-defendants:

1. Two counts of the unregistered offerings of securities (Saitama and SaitaRealty), in violation of Sections 5(a) and 5(c) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77e(a), (c)];

2. Fraud in the offer or sale of securities (Saitama), in violation of Section 17(a) of the Securities Act [15 U.S.C. §§ 77q(a)(1), (2), (3), and (4)];

3. Fraud in connection with the purchase or sale of securities (Saitama), in violation of Section 10(b) of the Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rules 10b-5(a), (b), and (c) thereunder [17 C.F.R. §§ 240.10b-5(a), (b), and (c)]; and

4. Market manipulation, in violation of Section 9(a)(2) of the Exchange Act [15 U.S.C. § 78i(a)(2)].

On November 28, 2024, Mr. Kohli was served in the United Kingdom with a copy of the Complaint. Dkt. 11 at ¶ 1. This timely motion to dismiss now follows.

### III.    <u>ARGUMENT</u>

**A. The Court Lacks Personal Jurisdiction Over Kohli.**

1. <u>Legal Standard.</u>

The plaintiff bears the burden of showing by a preponderance of the evidence that the court has personal jurisdiction over a defendant. *Am. Well Corp. v. Indegene Ltd*., No. 24-CV-10226-AK, 2024 WL 5153161, at *2 (D. Mass. 2024) (citing *Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 257 (1st Cir. 2022)). This requires the SEC to prove to the court that the exercise of personal jurisdiction is authorized by statute and satisfies the Fifth Amendment's due process clause, which requires the SEC to show, *for each defendant*, that the "defendant has adequate contacts with the United States as a whole, rather than with a particular state." *See SEC v. Sharp*, 626 F. Supp. 3d 345, 400 (D. Mass. 2022); *Sheldon v. DT Swiss AG*, No. 1:22-CV-11198-IT, 2024 WL 5046921, at *3 (D. Mass. 2024) (citing *Nowak v. Tak How Invs., Ltd*., 94 F.3d 708, 712–13 (1st Cir. 1996));

*see also Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually").[4]

Where, as here, the plaintiff is seeking the Court's exercise of specific jurisdiction rather than general jurisdiction, *see* Dkt. 1, ¶ 12, the Constitution requires that a defendant have "minimum contacts" with the forum, "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Spencer Pharmaceutical,* 57 F.Supp.3d at 133 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This requires the plaintiff to establish three conditions. *See Isijola v. US Telecommunications, Inc*., No. 4:23-CV-40080-MRG, 2024 WL 4190066, at *3 (D. Mass. 2024) (citing *A Corp. v. All Am. Plumbing, Inc*., 812 F.3d 54, 58 (1st Cir. 2016)).

*First*, "the claims must directly arise out of, or relate to," the defendant's forum-based activities. *Id. Second*, the defendant's forum-based activities "must represent a purposeful availment of the privilege of conducting activities in the forum […] making the defendant's involuntary presence before the [forum's] courts foreseeable." *Id. Third*, "the exercise of jurisdiction must be reasonable." *Id.*; *see also Sharp*, 626 F. Supp. 3d at 401. Finally, where, as here, a complaint is premised on the apparent sending of misrepresentations into the United States, a complaint must satisfy Fed. R. Civ. P. 9(b)'s requirements for pleading with particularity the specific misrepresentation(s) that shows that a defendant "purposefully directed its activities" at particular residents of the chosen forum. *See, e.g., Gould v. Wyse*, No. 22-2075, 2023 WL 4994511,

---

[4] It is not disputed that personal jurisdiction is authorized by statute in this case, because the Securities Act and Exchange Act both provide for worldwide service of process. *See SEC v. Spencer Pharmaceutical, Inc.,* 57 F.Supp.3d 127, 132 (D. Mass. 2014). However, the SEC must establish that the exercise of personal jurisdiction over Mr. Kohli satisfies constitutional due process requirements.

at *7–8 (10th Cir. 2023) (when a complaint sounds in fraud, Rule 9(b) pleading standards apply to allegations to support specific jurisdiction in the forum state).

  2. <u>The SEC Cannot Satisfy the "Minimum Contacts" Due Process Test with Respect to Mr. Kohli.</u>

The SEC has failed to establish that its claims against Mr. Kohli "directly arise out of, or relate to" Mr. Kohli's forum-based activities, and that Mr. Kohli purposefully availed himself of the privilege of conducting activities in this forum. *Isijola*, 2024 WL 4190066, at *3. As a result, the SEC has not satisfied the "minimum contacts" analysis, and the Due Process Clause bars this Court from exercising personal jurisdiction over Mr. Kohli.

The SEC's allegations concerning Mr. Kohli are bare-bones, at best. The only allegations specifically identifying actions by Mr. Kohli are the following:

- Mr. Kohli promoted unregistered securities via social media channels. Dkt. 1 at ¶ 7.

- Mr. Kohli was the Chief Financial Officer of Saitama LLC, headquartered in Lawrence, Massachusetts. *Id.* at ¶¶ 15, 17, 60.

- Mr. Kohli appeared in at least one YouTube interview (but is not alleged to have spoken). *Id.* at ¶¶ 64–65.

- Mr. Kohli represented that he was ready to buy Saitama on July 3, 2021, and then did purchase at Defendant Armand's direction. *Id.* at ¶¶ 76–78, 80, 88.

- Mr. Kohli made comments in a private group chat acknowledging the planned purchases of Saitama. *Id.* at ¶¶ 81–85.

- Mr. Kohli jointly requested a call with market maker ZM Quant. *Id.* at ¶ 96.

- Mr. Kohli jointly hired market maker Gotbit. *Id.* at ¶¶ 106, 111.

- Mr. Kohli edited his social media profile to include a link to the Saitama website. *Id.* at ¶ 117.

- Mr. Kohli made a post on X regarding the status of Saitama. *Id.* at ¶ 124.

- Mr. Kohli made a post on X regarding the SaitaMask launch. *Id.* at ¶ 133.

- Mr. Kohli sold Saitama during the 42 days before November 13, 2021. *Id.* at ¶ 136.

- Mr. Kohli participated in the offering of SaitaRealty tokens and served as Chief Financial Officer of the endeavor. *Id.* at ¶¶ 138–39.

- Mr. Kohli stood to benefit financially from the token economics of SaitaRealty. *Id.* at ¶ 144.

- Mr. Kohli co-authored an announcement on the SaitaRealty website about metaverse investments. *Id.* at ¶ 151.

- Mr. Kohli informed investors that SaitaRealty was listed on the MEXC and XT exchanges. *Id.* at ¶ 154.

In short, the SEC pleads that Mr. Kohli bought and sold cryptocurrency and tweeted about it a few times—this is the extent of the Complaint's allegations. Faced with the agency's threshold pleading requirements to establish jurisdiction, these allegations are inadequate. *See, e.g.*, *Sharp*, 626 F.Supp.3d at 401 (citing *Marino v. Hyatt Corp.*, 793 F.2d 427, 430 (1st Cir. 1986)) ("[T]he defendant's [in-forum] conduct must form an important, or at least material, element of proof in the plaintiff's case.").

The Complaint does not allege that Mr. Kohli bought from or sold to U.S. investors or even attempted to do so. *Compare Nowak*, 94 F.3d at 716–17 (Defendant who solicited business in the forum satisfied a minimum contacts analysis.). It does not claim that he bought or sold tokens on U.S. soil. It does not claim that he entered the U.S. to accomplish the alleged scheme, or in fact that he entered the U.S. at all. *Compare SEC v. Elliott*, No. CV 20-10860-LTS, 2020 WL 7185854, at *4 (D. Mass. 2020) (Defendant who entered the U.S. to make a false representation satisfied a minimum contacts analysis.). It does not claim that he hired U.S. agents or maintained U.S. accounts on U.S. exchanges to accomplish his purposes. *Compare SEC v. PlexCorps*, No. 17CV7007CBARML, 2018 WL 4299983, at *10 (E.D.N.Y. 2018) (Defendants who kept payment processing accounts in the U.S. satisfied a minimum contacts analysis.). It does not claim (with anything other than conclusory statements) that he directed messages of any kind into the U.S.— whether to investors, co-defendants, sellers, buyers, offerees, regulators, or anyone else. *Compare*

*Elliott*, 2020 WL 7185854, at *4 (D. Mass. 2020) (Defendant who emailed false representations into the U.S. satisfied a minimum contacts analysis.); *see also Adelson v. Hananel*, 510 F.3d 43, 50 (1st Cir. 2007) (The purposeful availment prong requires that the defendant's contacts with forum be "voluntary and not based on the unilateral actions of another party."). It does not claim that he traded on platforms based in the U.S. or even that he used computer systems which routed communications traffic through U.S. territorial bounds. It does not claim that he tailored his conduct to violate U.S. laws. *Compare SEC v. Straub*, 921 F. Supp. 2d 244, 255–56 (S.D.N.Y. 2013) (Defendant whose conduct was "designed to violate United States securities regulations" satisfied a minimum contacts analysis.).

The Complaint alleges *only one fact* which even arguably involves Mr. Kohli's activities in this forum—that he served as the Chief Financial Officer of Saitama LLC, which was organized in Massachusetts. *Id.* at ¶¶ 15, 17, 60. But this too fails to support personal jurisdiction over Mr. Kohli, on several grounds. First, there are no allegations as to what Saitama LLC actually did. The only specific allegation is that "Defendants," *after* Saitama Inu was created, "further formalized the management of the Saitama project by establishing Saitama LLC in Massachusetts" with Kohli serving, allegedly, as CFO. In effect, the Complaint concedes that the LLC—which dissolved after less than one year—had little to do with the issuance of Saitama or SaitaRealty tokens, and instead only served to "formaliz[e]" management of the undefined "Saitama project." This generic allegation, which means little and is subject to a variety of possible interpretations, cannot support the exercise of personal jurisdiction over Kohli. *See, e.g.*, *Ward v. Auerbach*, No. CV 16-12543-FDS, 2017 WL 2724938, at *11 (D. Mass. 2017) (citing *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994)), *aff'd sub nom. Ward v. AlphaCore Pharma, LLC*, 89 F.4th 203 (1st Cir. 2023) (holding that "vague" allegations cannot support personal jurisdiction); *see also*

*Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 356 (D. Mass. 2017) (citing *Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 129 (1st Cir. 1997)) (defining "vague" language as that which is subject to multiple interpretations).

Second, "it is axiomatic that jurisdiction over the individual officers of a corporation may not be based on jurisdiction over the corporation." *Katz v. Liberty Power Corp., LLC*, 693 F. Supp. 3d 154, 161 (D. Mass. 2023) (citing *M-R Logistics, LLC v. Riverside Rail, LLC*, 537 F. Supp. 2d 269, 279 (D. Mass. 2008)). "[P]ersonal jurisdiction over a corporate officer rests on whether there is 'an independent basis for jurisdiction based on an individual's actions,' rather than the corporation's contacts with the forum." *Sensitech Inc. v. LimeStone FZE*, 548 F. Supp. 3d 244, 254 (D. Mass. 2021) (quoting *Grice v. VIM Holdings Group, LLC*, 280 F. Supp. 3d 258, 27 (D. Mass. 2017)). "That inquiry considers whether the individual was a 'primary participant' in the alleged wrongdoing as it relates to the forum." *Id.* (quoting *Calder*, 465 U.S. at 790). The Complaint does not allege any participation by Mr. Kohli in any actions taken by the Massachusetts corporation: no business deals, no token issuance, no publications, no operations, negotiations, or marketing. As detailed above, there are *no allegations* in the Complaint that Saitama LLC specifically took any actions at all in this forum besides incorporation, much less that Mr. Kohli was a "primary participant" in any wrongdoing it may have allegedly performed. Therefore, his mere role as an officer of Saitama LLC cannot satisfy the "relatedness" prong of the "minimum contacts" test. *See Sensitech Inc.*, 458 F. Supp. 3d at 254 ("[A]n individual's status as a corporate officer is insufficient to establish the minimum contacts required to subject him or her to personal jurisdiction in a foreign forum.").

In only two places does the SEC allege that *any* of the defendants here conducted *any* activities at all in this forum. First, the Complaint alleges the "Defendants offered securities to

individuals who reside in the District [of Massachusetts]." Dkt. 1 at ¶ 12. Second, the Complaint

alleges that the "Defendants promoted Saitama and the Saitama ecosystem through several social

media and communications platforms," and that "[a]ll of these communications were aimed at the

investing public, including investors in the United States." Dkt. 1 at ¶¶ 47–48. At any rate, these

allegations are also insufficient to satisfy the minimum contacts test.

   "[A] plaintiff seeking to establish personal jurisdiction may not simply rely on vague or

conclusory allegations." *Ward*, 2017 WL 2724938, at *11. Yet that is what the SEC does here.

There is not a single mention of a single investor in the United States to whom the Defendants

(much less Mr. Kohli) purportedly offered securities, nor is there any mention of a single investor

in the United States to whom the Defendants (much less Mr. Kohli) purportedly "aimed" even a

single communication. The Complaint does not identify when such an offer may have occurred,

nor via what channels, nor what language was used, nor any key terms of such an offer. Neither is

it clear in any sense how one would "aim" a social media post to investors of a specific nationality

in the first place—especially when in at least some cases, the purported "promot[ing]" was to alert

potential investors of a listing on exchanges that purport to exclude U.S. customers. *See, e.g.*, Dkt.

1 at ¶ 154.[5] They cannot satisfy a minimum contacts inquiry because the allegations neither "arise

out of, or relate to" conduct touching the forum nor do they describe a "purposeful availment" of

that forum.

   Furthermore, these two vague allegations do not even specify which defendants

purportedly engaged in the alleged conduct, instead simply stating that the "Defendants,"

collectively, were responsible. As the Supreme Court has long held, "[e]ach defendant's contacts

---

[5] For example, neither of the cryptocurrency exchanges LBank and MEXC purport to serve U.S.
customers, as they make clear to anyone accessing their websites from a U.S. IP address.

with the forum State must be assessed individually," which the Complaint fails to do. *Katz*, 693 F. Supp. 3d at 161 (quoting *Calder*, 465 U.S. at 790 (1984)). Accordingly, vague allegations about what "defendants" did are insufficient to allow the Court to exercise personal jurisdiction over Mr. Kohli. This pleading failure is especially pronounced where, as here, the allegations are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires a specific recitation of "which defendants performed [each act]." *Sharp*, 626 F.Supp.3d at 388 (citation omitted).

Because the SEC has failed to plead facts of Mr. Kohli's activities in this forum sufficient to satisfy the "minimum contacts" standard, the Due Process Clause of the Constitution bars the Court from exercising personal jurisdiction over him. Therefore, the Court should dismiss all claims against Mr. Kohli.

**B. Claims 2–5 Are Impermissibly Extraterritorial and Should Be Dismissed.**

    1. <u>Legal Standard.</u>

"Courts presume that federal statutes apply only within the territorial jurisdiction of the United States." *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 91 F.4th 511, 518 (1st Cir. 2024), *cert. granted*, No. 23-1141, 2024 WL 4394115 (U.S. Oct. 4, 2024) (quoting *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407, 412 (2018)). Under this "presumption against extraterritoriality," courts construe federal laws "to have only domestic application" unless there is a "clearly expressed congressional intent to the contrary." *Id*. (citing *Yegiazaryan v. Smagin*, 599 U.S. 533, 541 (2023)).

Under the framework established by the Supreme Court in *RJR Nabisco*, questions of extraterritoriality are resolved through a two-step inquiry. "At the first step, [courts] ask whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a

clear, affirmative indication that it applies extraterritorially." *Id.* at 519 (quoting *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 337 (2016)). "If not, [courts] proceed to the second step and ask if the statute's application in the case at hand is truly extraterritorial or if, instead, the case involves a domestic application of the statute." *Id.* This inquiry is fundamentally "a merits question," and failure to plead facts satisfying an extraterritoriality analysis is a failure to state a claim on which relief may be granted. *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 154 (2010).

> 2. <u>The SEC Has Failed to Allege Facts Supporting Extraterritorial Application of the Securities Laws for Counts Two through Five.</u>

Here, the SEC has failed to plead facts to satisfy an extraterritorial analysis for four of the five claims against Mr. Kohli. Because this analysis looks to the text of the statute at issue, each of these claims is analyzed in turn below.

> a. *Claim 2: Offering of SaitaRealty (Section 5 of the Securities Act).*

Claim 2 alleges a violation of Section 5 of the Securities Act with respect to SaitaRealty, the second coin described in the Complaint.

Section 5 does not contain an "affirmative indication" that Congress intended it to apply extraterritorially. *See, e.g., SEC v. Ripple Labs, Inc.*, No. 20CIV10832ATSN, 2022 WL 762966, at *10 (S.D.N.Y. 2022). As a result, the Court must ask whether the application at hand "is truly extraterritorial" or instead domestic. *Smith & Wesson*, 91 F.4th at 519. While the 1st Circuit has not yet addressed this issue, the 2nd Circuit has held that to plead a domestic transaction under Section 5, a complaint must allege "specific facts that suggest that irrevocable liability attached or title was transferred in the United States." *Ripple*, 2022 WL 762966, at *11 (discussing *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 68–70 (2d Cir. 2012)). Sufficient facts might include allegations "concerning the formation of the contracts, the placement of purchase orders, the passing of title, or the exchange of money." *Id.*

14

Here, the SEC does not allege any facts that would support a finding that Mr. Kohli himself engaged in domestic transactions with SaitaRealty. The allegations concerning SaitaRealty do not identify any offers made in the U.S., any sales made in the U.S., or even the usage of any U.S.-based trading platforms. Dkt. 1, ¶¶ 138–57. Even the vague and generalized group pleading in Paragraph 48 refers only to communications about Saitama, rather than SaitaRealty. Dkt. 1, ¶¶ 47–48. Because no facts have been pled that could support a finding of domestic transactions with respect to SaitaRealty, and because the text of Section 5 does not rebut the presumption against extraterritoriality, the SEC has failed to state a claim upon which relief can be granted. Claim 2 should be dismissed as to Mr. Kohli.

   b. *Claim 3: Fraud in the Offer or Sale of Saitama (Section 17(a) of Securities Act).*

Claim 3 alleges a violation of Section 17 of the Securities Act. Unlike Section 5, Section 17 does contain a limited grant of extraterritorial application. If the alleged conduct at issue involved "significant steps in furtherance of the violation" within the U.S., or had "a foreseeable substantial effect" within the U.S., Section 17 may apply even absent a domestic transaction. 15 U.S.C. § 77v(c).

Here, the SEC has failed to plead facts that would satisfy either prong. As described above, the only allegations involving Mr. Kohli's actions within the United States are that he served as an officer of a Massachusetts corporation. But merely serving as an officer of Saitama LLC—a company in existence for less than a year—is not a "significant step" in furtherance of the alleged Section 17 violation. Nor did Mr. Kohli's conduct as alleged—none of which has any nexus to the U.S.—have a "foreseeable substantial effect" within the U.S. The SEC has not, for example, pled facts alleging that Mr. Kohli's acts were targeted to U.S. investors or related to the U.S. securities laws in such a way that they could be foreseen to have substantial effects within the U.S. And even

if the SEC had pled such facts, the statute requires that the defendant's acts have a substantial effect within the U.S. *See* 15 U.S.C. § 77v(c)(2) (granting extraterritorial jurisdiction over violations involving "conduct [. . .] that *has* a foreseeable substantial effect") (emphasis added). The Complaint does not allege any causal relationship between the acts allegedly committed by Mr. Kohli and any foreseeable and substantial effect in the U.S.

Turning to the second prong of extraterritoriality analysis under *RJR Nabisco*, the Complaint fails to allege domestic transactions—*i.e.*, sales where "irrevocable liability" inhered within the U.S. *SEC v. Morrone*, 997 F.3d 52, 59 (1st Cir. 2021) (citing *Absolute Activist*, 677 F.3d at 67). Mr. Kohli is not alleged to have made sales that would incur liability in the U.S., either by reason of the location of the buyer, the location of the transaction or servers facilitating the transaction, or even the location of the listing exchanges. Because the SEC has failed to satisfy an extraterritoriality analysis under *RJR Nabisco*, the SEC has failed to plead a claim, and Claim 3 should be dismissed as to Mr. Kohli.

      *c.   Claim 4: Fraud in the Offer or Sale of Saitama (Section 10(b) of Exchange Act).*

Claim 4 alleges a violation of Section 10(b) of the Exchange Act. Section 10(b) is subject to an identical limited grant of extraterritorial application as Section 17 of the Securities Act. If the alleged conduct at issue involved "significant steps in furtherance of the violation" within the U.S., or had "a foreseeable substantial effect" within the U.S., Section 10(b) may apply even absent a domestic transaction. 15 U.S.C. § 78aa(b).

Historically, analyses of Section 17 and Section 10(b) violations have treated the offenses as functionally identical. *See generally Morrison*, 561 U.S. 247; *Morrone*, 997 F.3d 52; *Sharp*, 626 F.Supp.3d 345. As discussed above, the SEC has not pled facts supporting a finding either that Mr. Kohli's acts involved significant steps inside the U.S., or that Mr. Kohli's actions had a

foreseeable and substantial effect within the U.S. Nor has the SEC pled domestic transactions where irrevocable liability inured within the U.S. Application of Section 10(b) to the allegation would be impermissibly extraterritorial under *RJR Nabisco*, and Claim 4 therefore should be dismissed as to Mr. Kohli.

> d.   *Claim 5: Market Manipulation of Saitama (Section 9(a)(2) of Exchange Act).*

Claim 5 alleges a violation of Section 9 of the Exchange Act. No court, to the defense's knowledge, has yet to consider whether the market manipulation provisions of Section 9 fall under the extraterritoriality grant of 15 U.S.C. § 78aa(b), which extends to "the antifraud provisions of this chapter." Some courts (including in this District) have held that an action under Section 9 may be subject to the heightened pleading standard of Fed. R. Civ. P. 9(b), arguably suggesting that Section 9 is one of the "antifraud provisions" within the ambit of 15 U.S.C. § 78aa(b). *See, e.g., Rosenberg v. Mass Mut. Life Ins. Co.*, No. CV 23-10441-FDS, 2024 WL 421780, at *3 (D. Mass. 2024). But even if § 78aa(b) grant of extraterritoriality applies, the allegations do not satisfy either statutory prong of the extraterritoriality analysis.

Applying the § 78aa(b) grant here requires the Court to ask whether Mr. Kohli's alleged conduct involved "significant steps in furtherance of the violation" within the U.S., or had "a foreseeable substantial effect" within the U.S. However, none of the allegations regarding Mr. Kohli specify that he took any steps in furtherance of the alleged market manipulation within the U.S.—there are no allegations that Mr. Kohli sent any communications to any U.S. investors, sold securities to any U.S. investors, or used U.S.-based exchanges. Nor does the Complaint plead any substantial effects within the U.S. as a causal result of Mr. Kohli's alleged manipulative conduct, whether foreseeable or otherwise. The § 78aa(b) grant of extraterrestrial jurisdiction does not apply to the facts as pled in this case.

The alleged conduct here likewise does not include reference to domestic transactions where irrevocable liability inhered in the U.S. The Complaint alleges, for example, that Mr. Kohli purchased approximately 82.99 trillion Saitama between July 3 and 4, 2021. Dkt. 1 at ¶ 88. But nowhere does the Complaint allege that Mr. Kohli's allegedly manipulative conduct incurred transactional liability within the U.S. Accordingly, neither prong of the extraterritoriality analysis is satisfied on these facts, and Claim 5 should be dismissed as to Mr. Kohli.

IV.     **CONCLUSION**

For these reasons, Mr. Kohli respectfully requests that the Court dismiss all claims against him based on a lack of personal jurisdiction, or, in the alternative, that the Court dismiss Claims 2–5 against him based on the SEC's failure to plead facts supporting an extraterritorial application of the securities laws.

Dated: January 31, 2025

Respectfully submitted,

*/s/  Eric S. Rosen*
Eric S. Rosen
DYNAMIS LLP
225 Franklin St., 26th Floor
Boston, MA 02110
(646) 541-8484
erosen@dynamisllp.com

Michael B. Homer
DYNAMIS LLP
225 Franklin St., 26th Floor
Boston, MA 02110
(617) 693-9732
mhomer@dynamisllp.com

*Attorneys for Plaintiff*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 31, 2025, a true and correct copy of the foregoing document was served by e-filing upon counsel of record.

/s/  Eric S. Rosen
Eric S. Rosen
DYNAMIS LLP
225 Franklin St., 26th Floor
Boston, MA 02110
(646) 541-8484
erosen@dynamisllp.com