UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MANPREET SINGH KOHLI, et al.,<br><br>Defendants. | Civil Action 24-cv-12586-AK |

**MOTION OF THE UNITED STATES (DEPARTMENT OF JUSTICE) FOR LEAVE TO INTERVENE AND FOR A STAY PENDING RESOLUTION OF CRIMINAL CASE**

The United States Department of Justice ("government") respectfully moves to intervene in this action for the limited purpose of moving for a stay of this proceeding pending resolution of a federal criminal case. That parallel criminal case—*United States v. Kohli et al.*, 24-cr-10189-AK—is pending against Manpreet Singh Kohli and Nam Tran, two of the defendants in this civil enforcement action, and it concerns largely the same alleged misconduct. A stay of this matter would protect the public interest in the proper administration of the criminal case, create genuine efficiencies, and not prejudice the civil litigants.

Plaintiff U.S. Securities & Exchange Commission ("SEC") assents to the government's motion to intervene and does not oppose the government's motion for a stay, subject to a limited carve out permitting the SEC to continue efforts to effectuate service of a summons and the civil

complaint on Tran (who is believed to reside in Vietnam). Defendant Manpreet Singh Kohli opposes the government's motion.[1]

## BACKGROUND

On June 27, 2024, a federal grand jury returned an indictment charging Kohli, Tran, and a third defendant (Haroon Mohsini) with conspiring with each other and others to commit market manipulation, to conduct an unlicensed money transmission business, and to commit wire fraud, as well as substantive counts of market manipulation and wire fraud. The grand jury returned the operative superseding indictment with these same charges on September 19, 2024. Crim. Case Dkt. 10 (the "Indictment"). Armand and Hernandez (co-defendants in this civil case) previously pleaded guilty to criminal informations alleging substantially identical conduct. *United States v. Armand,* 23-cr-10014-AK; *United States v. Hernandez*, 23-cr-10135-AK. Kohli was arrested on October 7, 2024. Extradition proceedings against Kohli are pending in the United Kingdom. Tran remains at large.

In parallel, on October 9, 2024, the SEC filed this civil enforcement action against Kohli, Tran, Armand, and Hernandez for offering to sell unregistered securities, in violation of Sections 5(a) and 5(c) of the Securities Act of 1933 (the "Securities Act"); engaging in fraud in the offer, purchase, or sale of securities, in violation of Section 17(a) of the Securities Act, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b–5 thereunder; and engaging in market manipulation in violation of Section 9(a)(2) of the Exchange Act. Civil Case Dkt. 1 (the

---

[1] Defendants Russell Armand and Maxwell Hernandez have agreed to proposed Consent Judgments that the SEC filed on October 9, 2024. Civil Case Dkt. 4, 5.

"Complaint"). Kohli filed a motion to dismiss the Complaint on January 31, 2025.[2] Civil Case Dkt. 16.

The criminal charges and the SEC's enforcement action address the same conduct by Kohli, Tran, Armand, Hernandez, and others in connection with their operation of a cryptocurrency company named Saitama and their promotion of cryptocurrency products. The Indictment and the Complaint set forth largely overlapping allegations, including the following:

Both instruments allege that these individuals coordinated a series of manipulative trades to create the appearance that many buyers were purchasing Saitama's cryptocurrency tokens, with the goal of attracting actual buyers to purchase Saitama's tokens. Indictment ¶¶ 19-22; Complaint ¶¶ 6, 71-89. Further, both instruments allege that these individuals hired "market makers" ZM Quant and Gotbit to artificially inflate the apparent trading volume of Saitama. Indictment ¶¶ 10-11, 22; Complaint ¶¶ 6, 19-20, 90-111.

Both the Indictment and the Complaint allege that these individuals made various false and misleading statements to induce investors to purchase Saitama. For example, they manipulated a publicly available research tool (DEXTools) to boost Saitama's ranking and then deceptively promoted the inflated ranking to investors. Indictment ¶¶ 26-27; Complaint ¶¶ 118-124. They published a "whitepaper" that they falsely advertised had been "reviewed by regulators." Indictment ¶ 28; Complaint ¶¶ 125-127. They falsely claimed on Saitama's website that Saitama's token was "coded in a way that prevents big wallet holders … from trying to manipulate the price in their favour or from dumping the token by selling out." Indictment ¶ 28; Complaint ¶¶ 112-117. Moreover, they falsely claimed that they were buying Saitama tokens and not selling their

---

[2] Kohli filed the motion to dismiss after the government inquired of his position regarding a stay but before informing the government that he opposes a stay.

Saitama tokens, when they were in fact profiting from selling their Saitama holdings. Indictment ¶ 29; Complaint ¶¶ 8, 128-131.

Both instruments describe how Kohli, Tran, Armand, Hernandez, and others promoted a cryptocurrency exchange that purported to allow users to exchange Saitama tokens with other cryptocurrencies. Indictment ¶¶ 30-32; Complaint ¶¶ 8, 132-137.

Finally, both documents allege that Saitama's promoters took steps to avoid U.S. law enforcement, including moving Saitama's operations outside the United States. Indictment ¶¶ 33-38; Complaint ¶¶ 17, 139.

The Complaint includes additional facts that, while not specifically alleged as "overt acts" in the Indictment, fall squarely within the "manner and means of the conspiracy and scheme to defraud" set forth in the Indictment (*e.g.*, "soliciting investors to buy Saitama Tokens through the Saitama website as well as through online marketing and messaging applications such as Telegram, Twitter, Instagram, and Youtube"; "making and causing to be made materially false and misleading statements about Saitama, its products, and its financing"). Indictment ¶ 16.

## ARGUMENT

### I. The Court Should Allow the Government to Intervene for the Limited Purpose of Seeking a Stay

Pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure, anyone may intervene as of right when the applicant "claims an interest relating to the property or transaction that is the subject of the action" and the applicant is so situated that "disposing of the action may as a practical matter impair or impede the [applicant's] ability to protect [that] interest, unless existing parties adequately represent that interest." *See also Int'l Paper Co. v. Inhabitants of Jay, Maine,* 887 F.2d 338, 342 (1st Cir. 1989) (discussing standard).

The government has a direct and substantial interest in the subject matter of this litigation, which concerns largely the same conduct underlying the government's criminal prosecution. Courts regularly recognize that federal prosecutors have a substantial interest in intervening in civil actions to protect the interests of the United States in securing convictions in criminal cases. *See*, *e.g.*, *TelexFree, Inc.*, 52 F. Supp. 3d 349, 352 (D. Mass. 2014) (granting motion to intervene for purpose of seeking a stay); *S.E.C. v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988) (denying appeal of district court order that allowed intervention and stayed SEC enforcement action in favor of criminal case). More specifically, the government has a "discernible interest in intervening in order to prevent discovery in [a] civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *Chestman*, 861 F.2d at 50. Without intervention, the government cannot protect its interest in the criminal prosecution, because it cannot weigh in on whether or how civil discovery should proceed, and no party to the civil action is in a position to protect the government's interest either.[3]

Because the operative facts of the two cases are largely the same, and because civil discovery might, as a practical matter, impair the government's ability to protect its interests in the enforcement of federal criminal law, the government respectfully seeks leave to intervene for the purpose of arguing for a stay of the civil case pending resolution of the criminal case.

---

[3] The Court can also permit intervention when an applicant's claim or defense and the main action have a question of law or fact in common. Fed. R. Civ. P. 24(b)(1)(B); *see also S.E.C. v. Downe*, 1993 WL 22126, at *11 (S.D.N.Y. 1993) ("It is well-established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding, which is anticipated or already underway, that involves common questions of law or fact."). Here, the facts at issue in the criminal and civil cases are largely the same, the government's motion is timely insofar as it is being submitted before discovery has begun in the civil action, and the plaintiff has assented to the government's intervention for the limited purpose of seeking a stay.

## II.     The Court Should Stay the Civil Case to
##         Protect the Integrity of the Pending Criminal Case

"It is apodictic" that federal courts have the inherent power to stay civil proceedings in deference to criminal matters. *Microfinancial, Inc. v. Premier Holidays Intl., Inc.*, 385 F.3d 72, 77 (1st Cir. 2004). Courts generally consider certain factors when deciding whether to stay a civil case pending resolution of a criminal case, including (a) the extent to which the civil and criminal cases overlap; (b) the status of the cases; (c) the interests of the civil litigants and any potential prejudice or hardship they might suffer; (d) the convenience of both the civil and criminal courts; (e) the interests of the public and third parties; and (f) the good faith of the litigants (or absence of it). *See id.* at 78; *TelexFree, Inc.*, 52 F. Supp. 3d at 352.

Here, these factors favor a stay. The facts, evidence, and witnesses in the two cases overlap almost entirely. Both cases are in their early stages, and the criminal case can proceed as soon as Kohli is extradited to the United States. The SEC does not oppose a stay, and Kohli would suffer minimal, if any potential prejudice in this proceeding if required to defend the criminal case first. A stay would conserve judicial resources, as the outcome of the criminal case is likely to shape any resolution of this case. And the public interest favors protecting the integrity of the criminal proceedings, in which the government bears the highest burden of proof.

### A.     A Stay Is Appropriate Because of the
###        Overwhelming Overlap of Facts and Evidence

A stay of a parallel civil enforcement action is appropriate when the criminal and civil cases are "inextricably intertwined" or the overlap between them is otherwise substantial. *See S.E.C. v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008) (citing favorably the proposition that "the most important factor in ruling on a motion to stay is the degree to which the civil issues overlap with the criminal issues") (citation omitted); *see also*, *e.g.*, *Walsh Secs., Inc. v. Cristo*

6

*Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 527 (D.N.J. 1998) ("The similarity of issues has been termed 'the most important issue at the threshold' in determining whether or not to grant a stay.").

As described above, the two actions here are substantively identical. They involve the same individuals who promoted Saitama and the same fraudulent schemes to mislead cryptocurrency buyers and to profit from Saitama. The two cases will necessarily rely on the same witnesses and documentary and other evidence. And while the SEC's civil case also charges violations of securities registration requirements, those claims relate to the same Saitama products that are the subject of the charges in the criminal case and the fraud violations in the SEC's case. Accordingly, this "most important factor" strongly supports a stay.

### B.     The Public Interest Weighs in Favor of a Stay

Courts routinely recognize that the public's interest weighs in favor of staying a civil proceeding pending resolution of a parallel criminal proceeding. *See TelexFree, Inc.*, 52 F. Supp. 3d at 353 (granting stay and observing that "the public interest in unimpeded criminal law enforcement outweighs the civil interests"); *S.E.C. v. Shkreli*, No. 15-CV-7175-KAM, 2016 WL 1122029, at *7 (E.D.N.Y. 2016) ("[T]he public's interest in the effective enforcement of the criminal law is the paramount public concern. Although the public certainly has an interest in the preservation of the integrity of competitive markets, the pending criminal prosecution serves to advance those same interests.") (citation and internal quotation marks omitted); *S.E.C. v. Abdallah*, 313 F.R.D. 59, 64 (N.D. Ohio 2016) ("[T]he public interest in effective criminal prosecution generally outweighs any existing civil interests.").

A primary reason that such stays are in the public interest is that civil proceedings can provide defendants various ways to impede a parallel criminal case. Specifically, "the principal concern with respect to prejudicing the government's criminal investigation is that its targets might

7

abuse civil discovery to circumvent limitations on discovery in criminal cases." *Beacon Hill Asset Management LLC*, No. 02-8855, 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003). The discovery and procedural rules in criminal cases balance state and personal interests and are "designed to protect the integrity and truth-seeking function of the criminal process." *Nicholas*, 569 F. Supp. 2d at 1072 (granting complete stay of parallel SEC case). That balance is upended, and the public's and victims' rights impacted, if a defendant is able to abuse civil discovery to circumvent the criminal rules. *See TelexFree, Inc.*, 52 F. Supp. 3d at 352 (noting that "staying the civil proceedings would prevent the criminal defendants from exploiting liberal civil discovery rules to obtain evidence to support their criminal defenses"); *see also*, *e.g.*, *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962) ("[A] judge should be sensitive to the difference in the rules of discovery in civil and criminal cases. . . . A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit.").

The concern is not abstract. For example, the criminal discovery rules do not allow for pre-trial depositions in the ordinary course.[4] Here, permitting the defendants to proceed with

---

[4] Federal Rule of Criminal Procedure 15 provides for depositions only "in order to preserve testimony for trial," and only in "exceptional circumstances and in the interest of justice." Fed. R. Crim. P. 15(a)(1). "The advisory and legislative committee notes make clear that Rule 15 does not authorize a party to take discovery depositions of the adversary party's witnesses. The case law has confirmed this construction of Rule 15, holding that it does not contemplate use of depositions of adverse witnesses as discovery tools in criminal cases." *United States v. Carrigan*, 804 F.2d 599, 602 (10th Cir. 1986) (citation omitted). *See also United States v. Fischel*, 686 F.2d 1082, 1091 (5th Cir. 1982) ("[U]nlike in civil cases, the Federal Rules of Criminal Procedure provide no broad right to take depositions. . . . Depositions are not discovery tools in criminal cases."); *United States v. Poulin*, 592 F. Supp. 2d 137, 145 (D. Me. 2008) ("Unlike civil actions, where depositions may be taken as a matter of right and may be for discovery or to obtain evidence, depositions may be taken in a criminal case only upon court order, and are not for discovery of information but only to preserve evidence.") (citation and further quotation marks omitted).

depositions through civil discovery would provide them an improper advantage by permitting them to interrogate witnesses in ways the criminal rules do not permit—outside the supervision of the criminal court, and in a proceeding to which the government is not a party and cannot object to questions, seek to refresh the witness's recollection, or rehabilitate the witness—and then to use those depositions in the criminal case. That would be fundamentally unfair, and it would be particularly inappropriate in a proceeding where it is the government that bears the ultimate and heavy burden of proving the defendant's guilt beyond a reasonable doubt. These concerns are even more acute where, as here, multiple potential witnesses may have viable Fifth Amendment rights, including cooperating witnesses who have agreed to plead guilty to conspiring with the defendants in the charged scheme but who have not yet been sentenced.

Similarly, the Jencks Act provides that, in criminal cases, the statements of a government witness cannot be the subject of subpoenas, discovery, or inspection until that witness has testified on direct examination. 18 U.S.C. § 3500. Rule 16 in turn specifically carves out Jencks material, warning that the rule does not "authorize the discovery . . . of statements made by government witnesses or prospective government witnesses except as provided in 18 U.S.C. § 3500 [the Jencks Act]." Fed. R. Crim. P. 16 (a)(2). Moreover, it is legal error for a trial court to order the government to disclose Jencks material in a criminal case before the statute requires.[5] Within this framework, it would be fundamentally unfair to permit defendants to use civil discovery in a parallel case to obtain Jencks Act material that they have no legal basis for obtaining in the criminal case.

---

[5] *See*, *e.g.*, *In re United States,* 834 F.2d 283, 287 (2d Cir. 1987) (district courts lack power to order early Jencks disclosure); *United States v. Taylor*, 802 F.2d 1108, 1117-18 (9th Cir. 1986) (same); *United States v. Ordaz-Gallardo*, 520 F. Supp. 2d 516, 523 (S.D.N.Y. 2007) ("District courts lack the authority to compel early disclosure of Jencks Act material.").

Already, this case presents Kohli with an opportunity to seek discovery for use in the criminal case, while he fights extradition and before he is even arraigned.  Kohli has moved to dismiss the Complaint for lack of personal jurisdiction and on extraterritoriality grounds.  Civil Case Dkt. 16.  The SEC, as the plaintiff, has the burden of showing that the court has personal jurisdiction over Kohli.  *See*, *e.g.*, *S.E.C. v. Elliott*, No. 20-cv-10860-LTS, 2020 WL 7185854, at *2 (D. Mass. Dec. 7, 2020) (citing *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002).  The Court may elect to hold an evidentiary hearing on Kohli's motion or proceed without one and apply a "prima facie standard," under which the SEC must "go beyond the pleadings" and make a "showing of personal jurisdiction … based on evidence of specific facts set forth in the record." *Id.*  (citing *Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 675 (1st Cir. 1992).  Thus, responding to Kohli's motion would require the SEC to present or proffer evidence, likely including statements by witnesses in the criminal case.  This is the very kind of scenario that courts seek to avoid by staying parallel SEC cases, so that defendants cannot use "civil discovery mechanisms to obtain disclosures that are otherwise unavailable under the criminal rules." *Nicholas*, 569 F. Supp. 2d at 1072.

In sum, the public interest is best served by trying criminal defendants according to the rules of criminal procedure that have been specifically designed to ensure compliance with the Constitution and fairness for all sides.  *See*, *e.g.*, *id.* at 1072 n.8 ("[T]he criminal discovery rules were crafted with an eye toward fairness for all concerned—the defendant, the prosecution, and the public. The Court rejects any implication that leaving Defendants with only criminal discovery mechanisms somehow prejudices their defense.").  The public's interest thus also favors a stay.

### C. The Civil Litigants Will Not Be Prejudiced by a Stay and the Judicial Efficiencies Support a Stay

The SEC does not oppose a stay of its enforcement action, and a stay would not unduly prejudice the defendants in this action.

Although a stay would delay the resolution of this case, such a delay does not itself amount to prejudice or hardship to the defendants.[6] Kohli may wish for the SEC's case to progress while he contests extradition in the criminal case, but a swifter resolution of the civil case would provide him little benefit other than the undue discovery advantages discussed above. The criminal case, and its attendant employment and reputational consequences, would remain pending. *See*, *e.g.*, *SEC v. LaGuardia*, 435 F. Supp. 3d 616, 622 (S.D.N.Y. 2020) (observing that the reputational prejudice to defendant "flows from the pending criminal charges as well") (citing *SEC v. Abraaj Inv. Mgmt. Ltd.*, 2019 WL 6498282, at *2 (S.D.N.Y. Dec. 3, 2019)). Conversely, there is little reason to believe that a stay would inhibit Kohli's ability to defend himself in this case if and when the stay is ultimately lifted.

Meanwhile, the efficiencies to a stay are clear. Courts routinely recognize that, with parallel cases, the resolution of the criminal case might expedite resolution of parts or all of the civil case, thereby conserving the resources of not just the civil litigants, but also the court. *See*, *e.g.*, *In re Worldcom, Inc., Sec. Litig.*, 2002 WL 31729501, at *8 (S.D.N.Y. Dec. 5, 2002) ("The conviction of a civil defendant as a result of the entry of a plea or following a trial can contribute

---

[6] In fact, the lack of a stay arguably could cause more potential prejudice to the civil defendants, as parallel proceedings can place before civil defendants the "precarious dilemma" of "having to choose whether to assert [their] Fifth Amendment privilege against self-incrimination (which could place [them] at a severe disadvantage in this case) or waive that privilege (and thus potentially incriminate [themselves] in the criminal case)." *Green v. Cosby*, 177 F. Supp. 3d 673, 676 (D. Mass. 2016).

11

significantly to the narrowing of issues in dispute in the overlapping civil cases and promote settlement of civil litigation not only by that defendant but also by co-defendants who do not face criminal charges."); *In re Grand Jury Proceedings (Williams) v. United States*, 995 F.2d 1013, 1018 n.11 (11th Cir. 1993) ("Although stays delay civil proceedings, they may prove useful as the criminal process may determine and narrow the remaining civil issues."); *Texaco, Inc. v. Borda*, 383 F.2d 607, 609 (3d Cir. 1967) (affirming stay because "the trial of the criminal case [might] reduce the scope of discovery in the civil action . . . [a]nd . . . perhaps [] might also simplify the issues"); *Brock v. Tolkow*, 109 F.R.D. 116, 120 (E.D.N.Y. 1985) ("[T]he resolution of the criminal case might reduce the scope of discovery in the civil case or otherwise simplify the issues."); *Rosenthal v. Giuliani*, 2001 WL 121944, *2 (S.D.N.Y. Feb. 9, 2001) ("[A] stay in the action will streamline later civil discovery since transcripts from the criminal case will be available to the civil parties."). A stay would thus allow not just the litigants, but also the Court, to avoid needless work, without undue prejudice to the defendants or to the overall public interest in the enforcement of both the criminal and securities laws.

## **CONCLUSION**

      For the foregoing reasons, the government respectfully moves for permission to intervene in this case and for a stay of the proceeding pending resolution of the parallel criminal case.

                Respectfully submitted,

                LEAH B. FOLEY
                United States Attorney

      By:  */s/ David M. Holcomb*
                CHRISTOPHER J. MARKHAM
                DAVID M. HOLCOMB
                Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: February 7, 2025

>  */s/ David M. Holcomb*
> DAVID M. HOLCOMB
> Assistant U.S. Attorney